**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Reginald Walters, et al., | ) | CV 04-1756-PHX-MS |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| Merrill George Roy, et al., | ) | |
| | ) | |
| Defendants. | ) | |

Pending before the Court are Plaintiffs' "Second Motion to Compel Production of Documents, Responses to Interrogatories, Affirm Deemed Admissions, Request for Sanctions, and First Motion for Extension of Times" (Doc. # 40), Alan Wittig's, counsel for Defendants, "Motion to Withdraw as Attorney" (Doc. # 42), and Plaintiffs' "Motion to Strike Responses, Affirm Deemed Admissions, and for Summary Judgment" (Doc. # 47). Defendants filed a Response to Plaintiffs' Motion to Strike Responses, Affirm Deemed Admissions, and for Summary Judgment (Doc. #54) and Plaintiffs filed a Reply (Doc. # 55).  Defendants did not file a Response to Plaintiffs' Second Motion to Compel (Doc. # 40).

**I. Procedural Background**

Plaintiffs, a group of investors seeking return of monies invested in Koda Financial Services ("Koda"), filed an action for declaratory judgment on August 22, 2004. (Doc. # 1). The Complaint alleges that Defendants Merrill George Roy and Suellen Roy ("Roy

Defendants") and Hazel Mortensen,[1] the trustees of the Royal Family Trust,[2] violated the Arizona Uniform Fraudulent Conveyances Act ("UFCA"), A.R.S. § 44-1001 *et. seq.*, by transferring certain assets to the Royal Family Trust for the purpose of hindering, delaying and/or defrauding Plaintiffs in their effort to collect a $421,061.50 default judgment rendered by the U.S. District Court for the District of Nevada against Koda, the Roy Defendants and Arlo Stott.[3]  Plaintiffs further submit that after the original renewal of the Royal Family Trust, and after service of the original complaint in this matter, Defendants cancelled the renewal and transferred via quitclaim deed several properties to other family members trusts and/or corporations.  Defendants submit that they did not contravene the UFCA because the properties in question were acquired before judgment was entered in the District of Nevada.

On August 1, 2005 Plaintiffs filed a Second Motion to Compel Production of Documents, Responses to Interrogatories, Affirm Deemed Admissions, Request for Sanctions and First Motion for Extension of Times (Doc. # 40).  The motion argues that Defendants failed to comply with this Court's June 8, 2005 Order instructing Defendants to provide supplemental responses to Plaintiffs discovery requests, and as a consequence request that the Court issue another order compelling Defendants to comply with Plaintiffs' discovery requests.[4]  (Doc. # 35).  Plaintiffs further request that the Court

---

[1] Since the beginning of the instant litigation, Hazel Mortensen has passed away. Plaintiffs aver they have no knowledge of any estate administration, and Defendants do not address it.

[2] Defendants state that the correct name of the trust is "Royal Equity Trust." The document effecting renewal of the trust lists the trustees as Defendant Merrill George Roy, Suellen Brower Roy, and Hazel Mortensen (Doc. # 1, Ex. C).

[3] Stott is not a defendant in the instant action.

[4] The discovery requests at issue include requests for production of documents, responses to interrogatories, and request for admissions.  Plaintiffs state that after this Court's June 8, 2005 Order, Defendants submitted a one page letter claiming that

affirm that all matters requested in Plaintiffs' Request for Admissions are deemed admitted as Defendants failed to respond within thirty days as required by FED. R. CIV. P. 36(a).  Finally, Plaintiffs' request attorney's fees and costs as sanctions for Defendants' failure to cooperate in the discovery process.  Defendants did not file a Response.

On August 9, 2005, Alan Wittig, counsel for Defendants filed a second Motion to Withdraw as Attorney of Record (Doc. # 42) after the original motion was stricken by the Court for failing to comply with the local and ethical rules.

On September 9, 2005 Plaintiffs filed a Motion to Strike Responses, Affirm Deemed Admissions, and for Summary Judgment (Doc. # 47).  In their motion, Plaintiffs request that the Court strike Defendants' late responses to Plaintiffs' discovery requests, as well as affirm as admitted all matters included in Plaintiffs' request for admissions resulting from Defendants' failure to meaningfully participate in the discovery process and the subsequent prejudice to Plaintiffs.  Plaintiffs also move for summary judgment on all claims listed in their Original Complaint.

## II.  Counsel for Defendants' Motion to Withdraw as Attorney

On August 9, 2005, counsel for Defendants, Alan Wittig and the Law Firm of Alan K. Wittig, P.C., filed a second Motion to Withdraw as Attorney of Record (Doc. # 42).  This Court's August 1, 2005 Order instructed counsel for Defendants that all local and ethical rules must be followed when filing a motion to withdraw.  While counsel has averred that copies of all Court documents have been provided to Defendants at the last known address of Defendant Merrill George Roy, and has informed them of deadlines in this case, counsel still does not articulate under which provision of ER 1.16(b) withdrawal is sought.  Despite this deficiency, the motion will be granted in view of the fact that

---

Defendants had no responsive documents.  Defendants failed to respond altogether to the interrogatories requests and request for admissions.  Plaintiffs again requested responses to the other discovery requests, and Defendants again responded with a one page letter explaining that because Defendants failed to pay the requisite storage fee, their documents were confiscated by a storage facility in Las Vegas, Nevada.

Defendants have retained new counsel, Mark Tynan, to represent them in this matter.

### III.  Plaintiffs' Motion to Strike Responses, Affirm Deemed Admissions, and for Summary Judgment

#### A.  Plaintiffs' Argument

Plaintiffs move the Court to strike Defendants' late response to Plaintiffs' discovery requests, or in the alternative, affirm that all matters described in Plaintiffs' request for admissions are judicially admitted as more than 30 days lapsed before Defendants' attempted to respond to Plaintiffs' request.  Moreover, Plaintiffs argue, Defendants have not moved for withdrawal or amendment of the admissions, and therefore the Court should affirm the admissions.  Plaintiffs submit that if the Court refuses to affirm the admissions, severe prejudice would result to Plaintiffs because of the lack of good faith participation by Defendants throughout the entire discovery process.

Plaintiffs further move the Court to enter judgment against Defendant on all claims made in their original complaint based on evidence presented in their summary judgment motion, previously presented evidence, and the admissions, if the Court deems them admitted.

Plaintiffs first request that the Court find that Defendants repeatedly violated the UFCA in first renewing the Royal Equity Trust after receiving a demand letter from Plaintiffs, and then by subsequently cancelling the renewal and transferring several properties via quitclaim deed to other family trusts and corporations.  Plaintiffs argue that the only plausible rationale for these transfers was to defraud and hinder Plaintiffs from satisfying their Nevada District Court judgment.

Plaintiffs next request that the Court find that Defendant Hazel M. Mortensen participated in a civil conspiracy to defraud Plaintiffs, and therefore Plaintiffs are entitled to a money judgment against her estate.  Plaintiffs posit that because Defendant Hazel Mortensen participated in the trust renewal, the renewal cancellation, and subsequent transfers of the properties, she is responsible as a co-conspirator.  Further, Plaintiffs

1    argue that because they will be unable to fully satisfy their Nevada District Court judgment

2    if the Court creates a constructive trust with the fraudulently transferred properties, an

3    additional money judgment against Defendant Hazel Mortensen's estate is necessary.

4          Lastly, Plaintiffs request that this Court establish a constructive trust on Plaintiffs'

5    behalf containing "any Properties currently or previously held, owned, or controlled by

6    Defendants, the transfers of which are found to be fraudulent for the purpose of hindering,

7    delaying and/or defrauding Plaintiffs[,]" so that Plaintiffs may satisfy the Nevada District

8    Court judgment in the amount of $421,061.50 plus interest from the date of entry.

9          **B.  Defendants' Response**

10         Defendants respond that the Court should allow Defendants' late responses to

11   Plaintiffs' Request for Admissions to stand to avoid using the admissions as a basis to

12   grant summary judgment in favor of Plaintiffs.  As to Plaintiffs' argument that the series

13   of transfers of the properties were violative of the UFCA, Defendants argue that because

14   Defendants acquired the properties in the first instance before Defendants became

15   Plaintiffs' debtors, the subsequent transfers did not contravene the UFCA.

16         **C.  Plaintiffs' Reply**

17   Plaintiffs reply argues that Defendants contention that because the properties were

18   acquired before the Nevada District Court judgment was entered, the subsequent

19   transfers were not violation of the UFCA is without merit.  Plaintiffs counter that some of

20   the properties were acquired after the Nevada judgment was entered, and in any case the

21   argument is irrelevant because it is the subsequent transfers of the properties which is at

22   issue, and not the date of acquisition.

23         **D.  Plaintiffs' Request to Strike Response and Affirm Deemed Admissions**

24         Plaintiffs seek to have the Court strike Defendants' late responses to Plaintiffs'

25   request for admissions, and to have those admissions deemed admitted and used by the

26   Court in considering Plaintiffs Motion for Summary Judgment.  As a preliminary matter,

27   it is necessary to detail the history of the parties' discovery disputes in this case, which

28                                            5

1 will aid in the determination of Plaintiffs' request to strike responses.

2        On December 1, 2004, Plaintiffs served their first request for admissions on

3 Defendant Merrill Roy. During this Court's January 25, 2005 Scheduling Conference, the

4 Court ordered Defendants to respond to all discovery requests by February 8, 2005.  On

5 February 8, 2005, Defendants filed blanket relevancy objections to Plaintiffs' request for

6 production of documents and request for interrogatories, stating:

7        **OBJECTION**.  Defendants object to these requests on the basis that
         the information sought is beyond the scope of permissible discovery
8        in that it is not relevant to any contested issue in these proceedings
         and is not reasonably calculated to lead to the discovery of
9        admissible evidence.

10       **OBJECTION**.  Defendants object to these interrogatories on the
11       basis that the information sought is beyond the scope of permissible
         discovery in that it is not relevant to any contested issue in these
12       proceedings and is not reasonably calculated to lead to the discovery
         of admissible evidence.

13 See Doc. # 29, Exhibit C.

14       On March 21, 2005 Plaintiffs filed a Motion to Compel, citing the blanket relevancy

15 objections by Defendants and the belated responses to Plaintiffs request for admissions.

16 Plaintiffs' Motion to Compel was granted, but the Court at that juncture declined to deem

17 the matters to have been admitted.  After Plaintiffs were further unsuccessful in resolving

18 their discovery disputes with Defendants, Plaintiffs filed a Second Motion to Compel and

19 Affirm Deemed Admissions (Doc. # 40) as well as the pending Motion for Summary

20 Judgment.

21       FED. R. CIV. P. 36(a) provides that a matter "is admitted" if the party to whom the

22 request is directed does not respond with a written answer or objection within 30 days,

23 or if the answer "does not comply with the requirements of the rule." Asea, Inc. v. S. Pac.

24 Trans. Co., 669 F.2d 1242, 1246 (9th Cir. 1981).  The response should explain in detail

25 why the answering party cannot admit or deny the matter.  Moreover, evasive denial is

26 an insufficient response to a request for admission.  Id.

27

28                                              6

Plaintiffs submit that if the Court were to amend or withdraw the admission at this late stage, they would be unduly prejudiced because of their inability to glean any information from the discovery process, which in turn impedes their ability to meaningfully present their case.   Defendants counter that striking Defendants late responses and affirming the admissions is an unsuitable remedy to Plaintiffs when those admissions will be used to obtain summary judgment.   However, in support of this argument, Defendants cite a district court case from the Central District of California which deemed admitted the admissions at issue when the defendants in that case filed their responses 12 days late. In re Heritage Bond Litigation, 220 F.R.D. 624, 626 (C.D. Cal. 2004).   Moreover, the court in Heritage did not hold that late responses to requests for admissions should be permitted if the alternative would be summary judgment by default.   The court noted that Rule 36 provides *discretion* to a court to allow late responses to relieve a party of default. French v. United States, 416 F.2d 1149, 1152 (9th Cir. 1969).   French articulated that it is only "[u]nder compelling circumstances the [Court] may allow untimely replies to avoid the admission [leading to default.]"  Id. (citing Moosman v. Joseph P. Blitz, Inc., 358 F.2d 686 (2d Cir. 1966).   However, because the purpose of Rule 36 is to eliminate delay, the Rule is not served by deeming admissions to have been made if the late responses were not injurious to the party seeking admissions.

Simply put, that is not the case here.   Defendants offer no convincing argument or rationale for their flagrant and continuous inability to meaningfully participate in the discovery process. Instead, Defendants submit that the Court should allow their late responses "so that justice might be done."  (Doc. # 54 at 2).   This argument, if accepted, would undercut the effectiveness of the rule.   Plaintiffs, for months, have unsuccessfully attempted to engage in the discovery process with Defendants, who have unfailingly refused to cooperate.   The Court will not exercise its discretion at this point to relieve Defendants of their own default.

Moreover, Defendants fail to address Plaintiffs' argument that they have suffered

prejudice by the late responses to the requests for admissions.  Plaintiffs' inability to procure even the smallest amount of discovery necessitates the conclusion that Plaintiffs have suffered prejudice, and therefore the Court finds that Defendants late responses to Plaintiffs' request for admissions are stricken and the matters addressed in the Requests for Admissions are therefore deemed admitted.

### E.  The Basis for a Grant of Summary Judgment

The Court must grant summary judgment if the moving party shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  Substantive law determines which facts are material.  Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Id.  The Court must draw all reasonable inferences supported by the evidence presented in the non-moving party's favor .  Berry v. Valence, 175 F.3d 699, 703 (9th Cir. 1998).

A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248.  The party opposing summary judgment "may not rest upon the mere allegations or denials [contained in the party's pleadings], but . . .  must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  If the evidence is merely colorable or is not significantly probative, summary judgment may be granted.  Anderson, 477 U.S. at 249-50.  However, because "[c]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are jury functions, not those of a judge . . . [t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [the non-movant's] favor at the summary judgment stage."  Id. at 255 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970)).

The party seeking summary judgment bears the initial burden of informing the court

of the basis for its motion and identifying those portions of the pleadings and discovery responses that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party that has the burden of proof on the issue at trial must establish all of the essential elements of the claim or defense for the court to find that the moving party is entitled to judgment as a matter of law. Fontenot v. Upjohn Co., 780 F.2d 1190, 1194 (5th Cir. 1986); Calderone v. United States, 799 F.2d 254, 259 (6th Cir. 1986). However, the moving party need not disprove matters on which the opponent has the burden of proof at trial. Celotex, 477 U.S. at 322.

### a. Analysis

#### 1. Defendants have repeatedly violated the UFCA.

Plaintiffs request that this Court grant summary judgment on the issue that Defendants violated the UFCA, first by renewing the Royal Equity Trust after receiving a demand letter from Plaintiffs, and then by subsequently cancelling the renewal and transferring various properties via quitclaim deed to other family owned trusts and corporations.[5]

The UFCA provides, in pertinent part, that:

> [A] transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . [w]ith actual intent to hinder, delay or defraud any creditor of the debtor[.]

A.R.S. § 44-1004(A) (2005). To determine whether the transferor had the intent to hinder,

---

[5] The following is a list of the properties Plaintiffs allege were fraudulently transferred:
1. 7505 E. Princess Dr., Mesa, Arizona
2. 1046 S. 72nd Place, Mesa, Arizona
3. 671 S. 93rd Way, Mesa, Arizona
4. 148 N. Hibbert, Mesa, Arizona
5. 450 E. 3rd St., Mesa, Arizona
6. 1404 S. Marita Dr., Boulder City, Nevada

1   delay or defraud, the Court must consider the totality of the circumstances including, but

2   not limited to, whether:

> (1) the transfer was to an insider; (2) the debtor retained
> possession or control of the property transferred after the
> transfer; (3) the transfer or obligation was disclosed or
> concealed; (4) before the transfer was made or obligation was
> incurred, the debtor had been sued or threatened with suit; (5)
> the transfer was of substantially all of the debtor's assets; (6)
> the debtor absconded; (7) the debtor removed or concealed
> assets; (8) the value of the consideration received by the debtor
> was reasonably equivalent to the value of the asset transferred
> or the amount of the obligation incurred; (9) the debtor was
> insolvent or became insolvent shortly after the transfer was
> made or the obligation was incurred; (10) the transfer occurred
> shortly before or after a substantial debt was incurred; and (11)
> the debtor transferred the essential assets of the business to a
> lienor who transferred the assets to an insider of the debtor.

A.R.S. §44-1004(B) (2005).  Plaintiffs submit that factors (1), (2), and (4) are present in

this case, and conclusively establish that the Defendants' transfers of properties were

made with the intent to hinder and delay Plaintiffs' satisfaction of the Nevada judgment,

as they were made just after Plaintiffs served their demand letter on Defendants.

Defendants counter that because all of the properties in question were acquired

prior to Defendants becoming debtors of Plaintiffs, the subsequent transfers were not

violative of the UFCA.

Defendants' argument is unavailing, does not in any way address Plaintiffs

argument, and does not create a genuine issue of material fact that would prevent the

Court from granting summary judgment on this issue.  Plaintiffs sent a demand letter to

Defendants on or about September 5, 2000, seeking return of investment monies after

Plaintiffs believed that an investment scheme in which they participated was fraudulent,

and threatened legal action if the monies were not returned.  (Doc. # 1, Exhibit B).  Just

after the demand letter was received by Defendants, Defendant Merrill Roy, Defendant

Suellen Roy, and Defendant Hazel Mortensen renewed their family trust to extend its life.

Plaintiffs subsequently sued Defendants in the District Court of Nevada and obtained a

judgment in the amount of $421,061.50.  (Doc. # 1, Exhibit A).  Plaintiffs then appeared

in this Court and filed their complaint on August 23, 2004 seeking a declaratory judgment rendering the family's trust renewal void as violative of the UFCA.  On September 17, 2004, the Defendants cancelled the renewal of the Royal Equity Trust and began to transfer ownership of several properties via quitclaim deed to other family trusts and corporations.  The fact that Defendants obtained ownership of the properties prior to September 5, 2000 (when the demand letter was sent and when Defendants became debtors of Plaintiffs for purposes of the UFCA) is irrelevant in determining whether the *subsequent transfers* of those properties were made with the intent to avoid satisfaction of the Plaintiffs' judgment in the District of Nevada.  The Court will address each of the enumerated properties in turn to determine whether the transfers were violative of the UFCA and are therefore void.

## (A)  7505 E. Princess Dr., Mesa, Arizona

This property was transferred from personal ownership of Defendant Hazel Mortensen to HM Mortensen Properties, LLC via quitclaim deed on September 30, 2004. On December 28, 2004 the GMR Trust obtained ownership of the property via quitclaim deed from HM Properties, LLC.  Plaintiffs allege that the cancellation of the renewal of the Royal Equity Trust and "the 'Subsequent Transfers' of the Properties formerly held within the Royal Equity Trust" are violative of the UFCA.  The transfers of ownership of this property provided by Plaintiffs do not show the Royal Equity Trust as a previous owner of the property.  As a result, the transfer of the property from Hazel Mortensen's corporation to the George Merrill Roy trust does not necessarily implicate the UFCA. Plaintiffs have not provided any evidence that this property's transfer was violative of the UFCA as it was simply transferred from one of the Defendant's companies to another Defendant's personal trust. The Court therefore finds that this property was not transferred in violation of the UFCA.

## (B)  1046 S. 72nd Place, Mesa, Arizona

This property was transferred from the Royal Equity Trust to HM Mortensen

11

Properties, LLC via quitclaim deed on September 30, 2004.  On November 12, 2004, HM Mortensen Properties transferred the property via quitclaim deed to the TVR Trust.  Here, as opposed to the previous property, there is evidence that the transfer of this property on September 30, 2004 was violative of the UFCA.  Defendants had just received the complaint in the instant case.  Immediately thereafter, they cancelled the trust renewal and transferred out the properties held by the Royal Equity Trust.  The Court therefore finds that transfer of this property to HM Mortensen Properties on September 30, 2004 did violate the UFCA and is void.

### (C)  671 S. 93rd Way, Mesa, Arizona

This property was transferred from the Royal Equity Trust to the Brower family trust on September 30, 2004.  Defendants state that no money was involved in this transaction. That is further evidence of a fraudulent transfer.  If Defendants desired to transfer ownership of this property to another trust where they would retain interest but lose the risk of holding the property in the Royal Equity Trust, whose trustees are being sued, then that demonstrates the transfer of the property was effected to hinder Plaintiffs' ability to satisfy their judgment.  As articulated in property (B), above, this property was also transferred out of the Royal Equity Trust on September 30, 2004 to the House of Brower Trust, immediately after Defendants had received the complaint in this case.  As a result, the Court therefore finds that the transfer of this property to the House of Brower Trust on September 30, 2004  did violate the UFCA and is void

### (D)  148 N. Hibbert, Mesa, Arizona

This property was transferred from the Royal Equity Trust to HM Mortensen Properties, LLC via quitclaim deed on September 30, 2004.  The property was subsequently transferred to My Mothers Trust via quitclaim deed on November 11, 2004 and December 28, 2004.  For the same reasons as properties (B) and (C), the Court finds that the transfer of this property to HM Mortensen Properties, LLC on September 30, 2004 did violate the UFCA and is void.

**(E)  450 E. 3rd St., Mesa, Arizona**

This property was transferred from HM Mortensen Properties, LLC via quitclaim deed to My Mothers Trust on November 12, 2004 and December 28, 2004.  Plaintiffs allege that the cancellation of the renewal of the Royal Equity Trust and "the 'Subsequent Transfers' of the Properties formerly held within the Royal Equity Trust" are violative of the UFCA.  The transfers of ownership of this property provided by Plaintiffs do not show the Royal Equity Trust as a previous owner of the property.  As a result, the transfer of the property from Hazel Mortensen's corporation to My Mother's Trust trust does not implicate the UFCA.  Plaintiffs have not provided any evidence that this property's transfer was violative of the UFCA as it was simply transferred from one of the Defendant's companies to another Defendant's personal trust. The Court therefore finds that this property was not transferred in violation of the UFCA.

**(F)  1404 S. Marita Dr., Boulder City, Nevada**

This property was sold by Merrill Roy to Richard A. Assalone on November 24, 2003.  Defendants do not address this property.  Because this property was sold for consideration to an individual unaffiliated with Defendants, unlike the other properties which were transferred via quitclaim deed to other family trusts or corporations, the Court finds that this property's transfer was not violative of the UFCA.

**2.  Conclusion and Order under the UFCA**

The timetable of the transactions with respect to properties (B), (C), and (D) compels the conclusion that the cancellation of the trust renewal and the subsequent transfers of the properties were made to hinder Plaintiffs' quest to satisfy their judgment. Because the Court must draw all reasonable inferences supported by the evidence presented in the non-moving party's favor, Berry v. Valence, 175 F.3d 699, 703 (9th Cir. 1998), and because Defendants have presented no evidence to suggest a genuine issue of material fact, the Court must grant summary judgment on this issue in favor of Plaintiffs with respect to properties (B), (C), and (D).  As for properties (A), (E), and (F), Plaintiffs

have not provided any evidence to compel the Court find that the transfers of those properties were violative of the UFCA.  Furthermore, based on the admissions that are deemed admitted,[6] the Court finds that the transfers properties (B), (C), and (D) were

_____

[6] The following admissions have been admitted as a matter of law, and compel the grant of summary judgment with respect to Defendants violations of Arizona's UFCA:

Request No. 9: That on or about September 7, 2000, [Defendant Merrill Roy] received a "Demand Letter" from George O. Mejlaender dated September 5, 2000, attorney for Reginald Walters and other individulas who made investments into an investment program offered by Koda Financial Services Corp.

Request No. 10: That on or about September 13, 2000, [Defendant Merrill Roy, as one fo the Trustees of the Royal Equity Trust, executed a Trust Renewal of the Royal Equity Trust.

Request No. 14: That on or about October 27, 2000, the Royal Equity Trust acquired real property located at 7505 E. Princess Drive, Mesa, Arizona.

Request No. 15: That monies received by [Defendant Merrill Roy], or by Koda Financial Services Corporation, from one or more of [the Plaintiffs] in Cause No. CV-S-0054-DWH (RJJ), were used to directly or indirectly acquire real and/or personal property.

Request No. 17: That real property acquired with monies received from one or more of said Plaintiffs was directly or indirectly conveyed to the Royal Equity Trust.

Request No. 18: That real property acquired with monies received from one or more of said Plaintiffs was directly or indirectly conveyed to or held by [Defendant Merrill Roy] as trustee of the Royal Equity Trust.

Request No. 19: That in September 2000, [Defendant Merrill Roy] executed a Renewal of the term of the Royal Equity Trust for the purpose of hindering [Plaintiffs] from satisfying a claim against [Defendant Merrill Roy] or for the purpose of delaying the satisfaction of such a claim.

Request No. 20: That [Defendant Merrill Roy] participated in the transfer or conveyance to the Royal Equity Trust of property acquired with monies received from one or more of said Plaintiffs with the intent to hinder, delay, or defraud Plaintiffs, or other similarly situated judgment creditors from satisfying a claim against [Defendant Merrill Roy].

Request No. 21: That [Defendant Merrill Roy] participated in the transfer or conveyance of property to one or more of the trustees of the Royal Equity Trust with the intent to hinder, delay, or defraud said Plaintiffs from satisfying a claim against [Defendant Merrill Roy].

Request No. 22: That [Defendant Merrill Roy] participated with Suellen Brower Roy in a conspiracy to extend the term of the Royal Equity Trust for the purpose of hindering, delaying, or defrauding Plaintiffs from satisfying a claim against

14

made in violation of the UFCA, and are void.  <u>United States v. Ranch Located in Young,</u>

<u>Arizona</u>, 50 F.3d 630, 632 (9th Cir.1995) (voiding a real estate transaction which violated

Arizona's UFCA when the debtor attempted to transfer ownership of a property to prevent

the government from seizing the property in a criminal proceeding).

**2.  Defendants engaged in a civil conspiracy to violate the UFCA and deprive Plaintiffs of the opportunity to satisfy their judgment**.

Plaintiffs further argue that Court should find that Plaintiffs are entitled to a money

judgment against Hazel M. Mortensen's estate for her role as a co-conspirator in violating

---

[Defendant Merrill Roy].

Request No. 23: That [Defendant Merrill Roy] participated with Suellen Brower Roy in a conspiracy to transfer real property to and/or from the Royal Equity Trust for the purpose of hindering, delaying, or defrauding said Plaintiffs from satisfying a claim against [Defendant Merrill Roy].

Request No. 26: That at the time [Defendant Merrill Roy] executed the Renewal of the Royal Equity Trust in September 2000, [Defendant Merrill Roy] knew that the extension of the trust term would hinder, delay, or defraud [Plaintiffs] from satisfying a claim against [Defendant Merrill Roy].

Request No. 27: That at the time [Defendant Merrill Roy] participated in the transfer of real properties to and/or from the Royal Equity Trust or to one or more of the trustees of the Royal Equity Trust, [Defendant Merrill Roy] knew that said transfer would hinder, delay, or defraud said Plaintiffs from satisfying a claim against [Defendant Merrill Roy].

Request No. 28: That in [Defendant Merrill Roy's] individual capacity or in their capacity as trustees of the Royal Equity Trust, [Defendant Merrill Roy] own[s] or [has] an interest in a real property located at 1046 S. 72nd Place, Mesa, Arizona.

Request No. 29: That in their individual capacities or in their capacities as trustees of the Royal Equity Trust, they own or have an interest in the real property located at 450 E. 3rd St., Mesa, Arizona.

Request No. 30: That in [Defendant Merrill Roy's] individual capacity or in [Defendant Merrill Roy's] capacity as trustee of the Royal Equity Trust, [Defendant Merrill Roy] owns or has an interest in the real property located at 148 N. Hibbert St., Mesa, Arizona.

Request No. 31: [Defendant Merrill Roy] own certificates of beneficial interests in the Royal Equity Trust.

Request No. 32: That [Defendant Merrill Roy], as Trustee of the Royal Equity, executed a Cancellation of the Trust Renewal Instrument concerning the Royal Equity Trust.

15

the UFCA when she participated in the cancellation of the renewal of the Royal Equity Trust, and transferred several of the Arizona properties to other family owned trusts and corporations.  Defendants do not respond to this argument in their response to Plaintiffs motion for summary judgment.

Plaintiffs have a money judgment against Defendants in the amount of $421,061.50.  The Arizona properties may be inadequate to fully satisfy the judgment. As a result, a money judgment is an appropriate remedy under circumstances where the equitable remedy is insufficient.  <u>Pearce v. Stone</u> articulates the requirements that must be met when stating a claim for money damages arising from a conspiracy to commit a fraudulent conveyance: (1) a fraudulent conveyance; (2) an agreement between two or more people to effect a fraudulent conveyance; (3) damages resulting from the conveyance that are traceable to the conspiracy; and (4) inadequacy of the equitable remedies under the UFCA.  <u>Pearce v. Stone</u>, 720 P.2d 542 (Ariz. Ct. App. 1986).  All four requirements are met here.  As discussed above, Defendants did effectuate fraudulent conveyances in violation of the UFCA to hinder Plaintiffs ability to satisfy their judgment. It is clear that Defendants had an agreement to effect these fraudulent conveyances for that unlawful purpose, and Plaintiffs certainly suffered damages traceable to the conspiracy in their inability to satisfy their judgment.  The properties alone are likely insufficient to satisfy the judgment, rendering the equitable remedies under the UFCA inadequate.

More importantly, Defendants offer no evidence that Defendant Hazel Mortensen was not involved in a conspiracy to violate the UFCA by cancelling the trust renewal and by subsequently transferring the Arizona properties to hinder Plaintiffs from satisfying their judgment.  Defendants do not assert any facts contradicting Plaintiffs statement of facts in support of their motion for summary judgment.  As a result, Defendants have not made any showing establishing the existence of any element essential to a claim in opposition to Plaintiffs' Motion for Summary Judgment.  Finally, because of the deemed admissions

1   in this case, summary judgment on this issue is appropriate.[7]

2         **3.  Plaintiffs are entitled to the creation of a constructive
    trust to satisfy the judgment obtained in the District of Nevada**
3

4         Plaintiffs further request the creation of a constructive trust containing all of the

5   Arizona properties which were involved in the fraudulent transfers which violated the

6   UFCA.  Plaintiffs argue that this is an appropriate remedy for the fraud perpetuated by

7   Defendants, and will allow Plaintiffs to partially satisfy their Nevada District Court

8   judgment.  Defendants do not respond to this argument in their response to Plaintiffs

9   motion for summary judgment.

10        Constructive trusts are imposed as a remedy for fraud. Warren v. Whitehall Income

11  Fund 86, 823 P.2d 689, 391 (Ariz. Ct. App. 1991), and "a constructive trust will arise

12  whenever the circumstances make it inequitable that the property should be retained by

13  the one who holds the legal title." Linder v. Lewis, Roca, Scoville & Beauchamp, 333

14  P.2d 286, 290 (Ariz. 1958).  In this case, the Court has now found that Defendants have

15  fraudulently attempted to hinder Plaintiffs from satisfying their judgment by transferring

16

17  _____

         [7] The following admissions have been deemed admitted by the Court and compel
18  summary judgment in favor of Plaintiffs regarding a money judgment against Hazel
    Mortensen for her role as a co-conspirator to prevent Plaintiffs from satisfying their
19  judgment against Defendants through the fraudulent property transfers in violation of
    Arizona's UFCA.
20        Request No. 22: That [Defendant Merrill Roy] participated in a conspiracy to extend
    the term of the Royal Equity Trust for the purpose of hindering, delaying, or defrauding
21  Plaintiffs from satisfying a claim against them.
          Request No. 23: That [Defendant Merrill Roy] participated in a conspiracy to transfer
22  real property to and/or from the Royal Equity Trust for the purpose of hindering, delaying,
    or defrauding said Plaintiffs from satisfying a claim against them.
23        Request No. 24: That [Defendant Merrill Roy] participated with Hazel M. Mortensen
    in a conspiracy to extend the term of the Royal Equity Trust for the purpose of hindering,
24  delaying, or defrauding said Plaintiffs from satisfying a claim against them.
          Request No. 25: That [Defendant Merrill Roy] participated with Hazel M. Mortensen
25  in a conspiracy to transfer real property to and/or from the Royal Equity Trust for the
    purpose of hindering, delaying or defrauding said Plaintiffs from satisfying a claim against
26  them.

27

28                                          17

the three enumerated Arizona properties to other family owned trusts and corporations. Plaintiffs are entitled to satisfy their judgment with the property that Defendants have tried to conceal.  Moreover, again, Defendants offer nothing by way of argument or facts to suggest that a constructive trust would be an inappropriate remedy.  Defendants have not created an issue of material fact that would prevent the Court from entering judgment for Plaintiffs and establishing a constructive trust on Plaintiffs' behalf for the three Arizona properties enumerated above.

Accordingly, Plaintiffs' Motion to Strike Responses, Affirm Deemed Admissions, and for Summary Judgment will be granted in part and denied in part.

### IV. Plaintiffs' Second Motion to Compel Production of Documents, Responses to Interrogatories, Affirm Deemed Admission, and Request for Sanctions, and First Motion for Extension of Times

Because the Court has granted Plaintiffs' Motion for Summary Judgment, it is unnecessary to decide Plaintiffs' Second Motion to Compel.

### V. Orders

**IT IS ORDERED THAT:**

1. The "Motion to Withdraw as Attorneys of Record for Defendants," filed by Alan K. Wittig and the Law Firm of Alan K. Wittig, P.C. (Doc. # 42) is **GRANTED**.

2. Plaintiffs' "Motion to Strike Responses, Affirm Deemed Admissions, and for Summary Judgment" (Doc. # 47) is **GRANTED** in part and **DENIED** in part, as explained herein.

3. Plaintiffs shall have a money judgment against the Estate of Helen M. Mortensen in the amount of $421,061.50 for her role as a co-conspirator in the fraud perpetuated by Defendants against Plaintiffs.

4. A constructive trust is established with respect to the following Arizona properties which were fraudulently transferred in violation of Arizona's UFCA: (B) 1046 S. 72nd Place, Mesa, Arizona; (C) 671 S. 93rd Way, Mesa, Arizona; and (D) 148 N.

1 Hibbert, Mesa, Arizona.

2   5.  Plaintiffs' "Second Motion to Compel Production of Documents, Responses to

3 Interrogatories, Affirm Deemed Admissions, and Request for Sanctions, and First Motion

4 for Extension of Times" (Doc. # 40) is **DENIED AS MOOT**.

5   6.  In view of the remaining issues in this case, Plaintiff's request for attorney's fees

6 is **DENIED** as premature.

7

8

9

10   DATED this 22nd day of February, 2006.

11

12

13

                                 Morton Sitver

14                        United States Magistrate Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28